UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-63017

ERIC WATKINS
        Plaintiff,

v

MARK PINNOCK, et al
        Defendants.

Response to the Defendants' Memorandum
of Law in support of their motion for sum-
mary Judgment - Doc 255

        Comes now Plaintiff, Eric Watkins, Files this Response
to the Defendants' Memorandum of Law in support of
their motion For summary Judgment - Doc 255. and
moves this Court to deny summary final Judgment in
the defendants favor. Additionally, Plaintiff Filed a
response statement of material facts in opposition to
the defendants concise statement of undisputed
material Facts and in support of Plaintiff's response
to the defendants' memorandum of law in support of
their motion for summary Judgment. Plaintiff's Response
statement of Material Facts would be hereafter referred to
as RSOMF at para. ___ . In support Plaintiff offers the
following:

(A)   The defendants are not entitled to partial summary

                        1 of 14 P.

Judgment on Counts 2. In support Plaintiff offers the following:

<u>Argument 1</u>

The mere singing of the antigay song without more is protected speech under the First Amendment because the lyrics, though some may be offensive, are not Face to Face Fighting words within the meaning of Case law. The First Amendment protects offensive language. Face to Face Fighting words which are prohibited by the First Amendment must be directed at a specific person, organization or entity in order to not be protected by the First Amendment.

① According to R.A.V. v City of St. Paul, Minn. 505 U.S. 377, #32 (1992) "Whether words are fighting words is determined in part by their context. Fighting words are not words that merely causes offense; fighting words must be directed at an individuals so as to "by their very utterance, inflict injury." See also Cohen v California 404 U.S. 15, 20 (1971) "Fuck the draft" Jacket did not constitute fighting words because there was no showing that any one who saw Cohen was infact violently aroused or appellant intended such a result."

② The evidence presented to the Court is that Plaintiff was merely singing an antigay song, from time to time, only in the sally port intake area prior and subsequent to the defendants making contact with Plaintiff in the intake sally port area. RSOMF para 4, 7-A, 19, 22

2 OF 14 P

③ Prior to Plaintiff walking into the Jail and step cell as ordered by the defendants neither the defendants, arresting officers or any intake staff never ordered Plaintiff to stop singing the antigay song. and no one at the Jail was offended or violently aroused by Plaintiff's singing of the antigay song and Plaintiff did not intend to cause a violent arousal of any one. RSOMF para 20, 50, 51

④ Plaintiff never directed the antigay song to any particular individual, organization or entity, but was merely singing the Song as he is accustomed to doing. RSOMF para. 50

Argument 2

Jail staff, arresting officers and inmates does not have a substantial privacy interest in Jail.

⑤ The supreme Court has reiterated that "we are often captives outside the Sanctuary of the home and are subject to objectionable speech..." but the ability of Government, consonant with the Constitution to shut off discourse solely to protect others from hearing it is dependant upon a showing that substantial privacy interest are invaded in an essentially intolerable manner." Cohen v California 403 U.S. 15, 21 (1971)

⑥ Beyond the speculations that singing the antigay song creates "the strong potential for that conduct to cause dangerous disturbances in an already dynamic environment" is that there's no evidence to support such, hence such

speculations does not meet the Governments burden
of showing that substantial privacy interest are
invaded in an essentially intollerable manner" or
that the degree to which the purpose behind the
beating are actually served by beating up Plaintiff
so that he dont never sing the antigay sing again
in Jail. And such beating is an unconstitutional
remedy.

## Argument 3

The Antigay song is not discriminatory and is protected
speech because it is mere speech.

① According to Booth v Pasco Cnty. Fla. 829 Supp.
2d 1180, 1203 (M.D. Fla. 2011) (quoting Roberts v U.S. Jaycees,
468 U.S. 609, 628 (1984)" discriminatory speech is not
protected speech as potential expressive activities
that produce special harms distinct from their comm-
unicative impact are entitled to no constitutional pro-
tection" However, this legal premise has no bearing
on the instant case because it pertains to speech
in the form of expressive behavior that produces
"special harms distinct from their communicative
impact."

② The supreme Court case from which Booth lifted the
quote, the unprotected speech that the supreme cout
was addressing was an expressive act, not mere discymn-
atory language. A more expanded quote of the Courts
opinion in Roberts shows the proper context of the

of the legal premises.

"As we have explained, acts of invidious discrimination in the distribution of publicly available goods, services, and other advantages cause unique evils that Government has a compelling interest to prevent, wholly apart from the point of view such conduct may transmit. Accordingly, like violence or other types of potentially expressive activities that produces special harms distinct from their communicative impact, such practices are entitled to no constitutional protections. Roberts, 488 U.S. at 628 (emphasis added (citing Runyon V McCrary, 427 U.S. 160, 175-76 (1976) see WATTIMS V Finch et al 14-60524 Doc 65 pp 78

(9) In the instant case the speech at issue is mere language that may have had a communicative impact on the SIX BSO Jail Deputy guards - Defendant that is that they did not like the content of the song.

### Argument 4

The defendants misled this court when claiming that Plaintiff admitted that the impact of the lyrics in the antigay song could lead to the potential for violence or possible confrontations from other individuals or inmates at the main Jail. Sof at 2, 4-8, Plaintiff never stated such.

(10) The lyrics in the antigay song cannot lead to the

5 OF 14 PP

potential for violence or possible confrontations from other individuals or inmates at the main Jail no more than any other speech because the lyrics are part of a song and are not directed at any particular individual and they are not discriminatory within the meaning of the law that would deprive an inmate or staff of something.

11 Just because offensive words could be heard by listeners in any place does not mean that violence would occur; such is mere speculations.

12 Prior to March 14, 2013 Plaintiff had been arrested in 2011 and 2012, on both occasions while in the main Jail Plaintiff sung the antigay song from time to time and there was never a problem with inmates or Jail staff. RSOMF para. 52

13 Clearly, since the lyrics of the song sung by Plaintiff is not fighting words and not discriminatory within the meaning of law Plaintiff has clearly demonstrated that the singing of the antigay song like any other speech is protected.

B  <u>Adverse Action likely to deter speech</u>

<u>Argument 5</u>

The beating Plaintiff claims to have gotten from the six defendants is an Adverse Action likely to deter speech.

6 of 14 pp

(14) According to the evidence Plaintiff was beaten badly by the six defendants because, in part of his singing of the antigay song and that he was left injured. That subsequent to the beating Defendant Galindez warned Plaintiff that he did not WANT Plaintiff singing bum bye bye in the Jail anymore or else him and the other defendants would beat Plaintiff up again. RSUMF para. 10, 19, 21, 26-32, 35-37, 46, 48;

(C) Causal connection between Retaliatory Action and Adverse effect on speech.

## Argument 6

There's a causal connection between the retaliatory action of the defendants = Beating of Plaintiff - and the adverse effect on his singing of the Antigay Song.

(15) As the record demonstrates plaintiff was singing the antigay song in the sally port intake area when the defendants walked out into that area and ordered Plaintiff to walk into the Jail and strip cell. once in the strip cell all of the defendant attacked Plaintiff and beat him up badly. After the beating Defendant Galindez, who was the sergeant, told Plaintiff what you got today is a wopping and warned him that he didn't want to hear plaintiff singing the antigay song in the Jail again or

him and the other defendants would beat Plaintiff
again. Galindez would harm Plaintiff on three
occasions subsequent to the beating supra. RSOMF
para. 10, 19, 21, 26-32, 35, 39, 46, 48

(16) Clearly there exist sufficient causal conn-
ection between the beating Plaintiff got from the
defendants and his singing of the antigay song.

<u>Defendants are not entitled to summary Judgment
in Counts 6</u>

Argument 7

There is dispute of material facts that defendants
were Justified in strip searching Plaintiff, Plaintiff's
conduct upon arrival at the main Jail and while
being escorted into the main Jail was not violent
or threatening. The defendants did violate Plaintiffs
right to be free from unreasonable searchs and it
was clearly established that only upon reasonable
suspicion that a pretrial newly arrived arrestee
of a minor offence may possess a deadly weapon
or contraband Justifies a strip search of that
arrestee. In support Plaintiff offers the following:

(17) Mere singing of the antigay song in the Jail
as Plaintiff did does not Justify a strip search.

(18) As Plaintiff has clearly demonstrated earlier in
this response, supra, his mere singing of the antigay
song is protected by the First Amendment because

8 oF 14 PP

It is not Face to Face fighting or threatening words or language which the First Amendment does not protect. Hence the singing of the antigay song and the songs lyrics, without more, is not violent and or threatening words or language within the meaning of the law.

(19) I put this Court on notice, that no where in the record does the defendants offer any evidence that the reason they **Strip** ~~searched~~ Plaintiff was because he was singing the antigay song. They have not even made such a claim.

(20) The eleventh circuit has explained the "Justification" prong of the Bell decision in two recent cases; Skurstenis v Jones 236 F3d 678 (11th cir. 2000) and Wilson v Jones 251 F3d 1340 (11th cir. 2001). Both cases make clear, that the Fourth Amendment requires Jail officials to have "reasonable suspicion" that an arrestee is concealing weapons or contraband before they can perform a strip search. If Jail officials have reasonable suspicion, that an arrestee is concealing weapons or contraband, they do not infringe on her constitutional rights by conducting a strip search. Cuesta v. Sch Bd 285 F3d 962, 968 (11th cir. 2002)

_There was no reasonable suspicion, that Plaintiff was concealing weapons or contraband prior to the defendants strip searching him and no Justification for strip search._

9 of 14 pp

21) Plaintiff was not arrested or charged with any crime of violence, threats or agression and was not charged with a felon or any crime related to the singing of the antigay song. Plaintiff was charged with a misdemeanor trespass violation. RSOMF para. 1, 19; Doc 254 para. 1

22) The song Plaintiff was singing was an antigay song written by reggea artist Buju Banton and the song has many non offensive lyrics. RSOMF para. 49

21) Plaintiff only sung the antigay song in the sally port intake area of the jail and not while walking into the jail or strip cell. RSOMF para 4, 20, 19, 22, 40

22) No one, including the defendants, ever expressed offense to Plaintiff singing the song and no one was violently aroused by Plaintiff singing the song. RSOMF para. 57

23) While singing the antigay song Plaintiff never directed it at the defendants nor anyone else at the main jail or prior to reaching the main jail. RSOMF para. 50

24) While in the sally port area the defendants, the arresting officers nor the intake staff never asked or ordered Plaintiff to stop singing the antigay song and there was no prohibition to sing the song. RSOMF para. 20, 21

10 of 14 PP

25) According to Plaintiff's clear version of what transpired he was not disruptive, he coorporated with all orders given to him by the arresting officers in the sally port intake area and by the defendants without any verbal or physical resistence. That Plaintiff was not and never violent or unruly in the sally port intake area, or any where else in the main jail, to any of the arresting officers, the defendants nor intake staff. RSOMF para 6, 7(A), (E), 18, 21

26) Additionally, the defendants has not indicated the specific conduct they observed that justified them strip searching Plaintiff. They only made conclusory claims that Plaintiff was causing a disruption, was violent and uncoorperative and unruly. See Doc 255 p6.

27) Plaintiff has also disputed the defendants claim of getting prior information from BSO Communications or the Central intake Bureau (Booking) that Plaintiff was being unruly, violent and uncooperative. RSOMF para. 7 (A)(E).

28) The language of the verbal argument Plaintiff got into with Defendant Pinnock was not violent or threatening language and hence did not justify strip searching plaintiff. RSOMF para. 23-25

29) The facts of Plaintiff's case are clearly distinguishable from the facts in Cuesta V. Sch. Bd. 285 F3d 962,

11 of 14 PP

968 (11th Cir. 2002

(30) Cuesta and her friends were arrested and charged with the misdemeanor crime of distributing publications that exposed individuals or religious groups to hatred, contempt, ridicule or obloquy. Plaintiff was charged with the misdemeanor offense of trespass after warning. Cuesta's misdemeanor was then enhanced to a hate crime felony charge. Plaintiff's charge remained a misdemeanor and the same charge. The Content of Cuesta's publications were violent and threatening language and imagery that were all directed at specific persons at the school. Plaintiff's singing of the anti-gay song was not an offense and though some may find some of the lyrics of the song violent and offensive its clear that the song and the lyrics were not directed at any particular individual or individuals at the Jail.

## Argument 8

The defendants strip search of Plaintiff was intended to continue to humiliate and punish Plaintiff, as the defendants beating of plaintiff was intended because of this singing of the Antigay song in the sally port area, his antipolice talk and because of the argument he got into with pranoble while walking into the Jail.

(31) The record is clear, the defendants order and strip search of Plaintiff occurred after they had

12 OF 14 PP

beaten up plaintiff, after Pinnock pulled down plaintiff's pants and after Defendant Galindez cursed and warned plaintiff regarding him singing the antigay songs and verbally expressing antipolice rhetorie in the jail in the future and that if he did either once outside the strip cell all defendants would bring him back into the strip cell and beat him again. RSOMF para 22-25, 26-36, 35-39, 43-44, 46

32) According to Plaintiff prior to and at the main jail's intake sally port area he had complied with the arresting officers pat search him for the third time. RSOMF para 6, 14-15, 18

33) As plaintiff has demonstrated earlier it was clearly established that a prisoner retain a constitutional right to bodily privacy and that it was clearly established that in order to strip search an arrestee jail officials needs "reasonable suspicion" that an arrestee is concealing weapons or contraband. See pg 11 para 20 and Doc 255 p5

34) Even under the Bell v Wolfish 441 U.S. 520, 555 (1978) standard plaintiff has demonstrated that there was absolutely no justification for strip searching him. Plaintiff has clearly demonstrated that he was not disruptive, unruly, violent nor uncooperative at the main jail.

Conclusion

For the reasons stated above this court should not grant partial summary judgment on count 2 as to the singing of the antigay song and no summary judgment as to counts 6 because the defendants did not have reasonable suspicion nor any justification to strip search Plaintiff.

Respectfully filed this 6 day of February 2018

Eric Watkins
10814 NW 40th Street
Sunrise, Florida 33357

Certificate of service

I hereby certify that on February 6 2018 a true and correct copy of the foregoing has been served via email to the defendants attorney Seth Haimovitch at haimovitch@Kdlawyers.com

Eric Watkins